UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DIANE ALEXANDER,

    Plaintiff,

v.                                     Case No:   2:17-cv-568-FtM-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Diane Alexander, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.   Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

**A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income on January 31, 2011, and alleged disability beginning January 1, 2009. (Tr. 396-408). Her claim was denied at the initial level on August 4, 2011. (Tr. 228-33). Her claim was denied at the reconsideration level on November 2, 2011. (Tr. 235-40). Administrative Law Judge M. Dwight Evans issued an unfavorable decision on May 16, 2013. (Tr. 206-21). Plaintiff filed a timely request for review with the Appeals Council on May 28, 2013. (Tr. 348-51). The Appeals Council granted the request for review on June 26, 2014 and remanded the claim for a new hearing and decision. (Tr. 222-27).

Following the Appeals Council Remand, Administrative Law Judge Maria C. Northington ("the ALJ") issued an unfavorable decision on September 2, 2015. (Tr. 10-36). Plaintiff filed a timely request for review with the Appeals Council on October 29, 2015. (Tr. 39). The Appeals Council granted the request for review but issued an unfavorable decision on August 18, 2017. (Tr. 1-9). In the revised unfavorable decision, the Appeals Council adopted the majority of the findings from the September 2, 2015 ALJ decision, but revised the portion of the decision dealing with the analysis of Medical Listing 12.05. (*Id.*). Thus, the combined September 2, 2015 ALJ

decision and the August 18, 2017 Appeals Council decision constitute the final decision of the Commissioner. Plaintiff initiated the instant action by Complaint (Doc. 1) on October 16, 2017.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2009, the alleged onset date. (Tr. 15). At step two, the ALJ found that Plaintiff had the following severe impairments: intellectual deficit with low IQ, dyslexia, depression, anxiety, right knee osteoarthritis, and obesity. (Tr. 15). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) such that the claimant is capable of performing medium work that includes lifting and carrying up to 50 pounds occasionally and 25 pounds frequently as defined in Dictionary of Occupational Titles (DOT) and the regulations. If someone can do medium work, it is opined that this person can also perform light and sedentary work that are inclusive within this exertioual level. The claimant has no limits for sitting in an eight-hour workday with standing and/or walking limited to six hours in an eight-hour workday. The claimant is capable of occasionally climbing ramps/stairs and stooping. She is to perform no crawling, no crouching, no kneeling and no climbing of ladders/ropes/scaffolds. Claimant must be allowed the ability to optionally alternate between sitting and standing about every hour but such would not cause her to be off-task nor would it cause her to leave the workstation. Secondary to asthma, the claimant is to avoid concentrated exposure to respiratory irritants such as fumes, odors, smoke, gases and poor ventilation. Claimant is to avoid concentrated exposure to extremes of heat, humidity and cold temperatures. The claimant is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that may cause harm to self or others. Secondary to limited IQ, she retains the capacity to understand, remember and carry-out simple instructions and perform simple routine repetitive tasks as consistent with unskilled work. Secondary to a limited

education and dyslexia, she is to perform no work that requires reading
and writing beyond the 5th grade as part of a job.

(Tr. 18). At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a sales clerk, airline security rep screener/checker, porter/baggage handler, and counter attendant. (Tr. 26).

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 27). Relying on the testimony of the vocational expert, the ALJ found that Plaintiff could perform such jobs as hand packager, merchandise marker, clerical reader, table worker, and cashier II. (Tr. 27). The ALJ concluded that Plaintiff had not been under a disability since January 1, 2009, the alleged onset date, through September 2, 2015, the date of the decision. (Tr. 28-29).

The Appeals Council granted review of the ALJ decision and assumed jurisdiction of the case. (Tr. 4). The AC adopted the ALJ's findings and conclusions as to the question of disability and, particularly, the ALJ's findings at steps one, two, four, and five. (Tr. 4). However, the AC disagreed with the ALJ's rationale in support of her step three finding that Plaintiff's intellectual disability did not meet a listing. (Tr. 4-5). Applying the regulations in effect at the time, the AC found that Plaintiff's intellectual impairment did not meet the severity of Listing 12.05B because she did not have sufficient deficits in adaptive functioning. (Tr. 5). Thus, the AC concluded Plaintiff was not disabled from the alleged onset date through the date of the ALJ's decision. (Tr. 5-6).

**II.    Analysis**

Plaintiff raises three issues on appeal: (1) whether the Appeals Council erred by finding that Plaintiff does not meet Medical Listing 12.05; (2) whether the ALJ erred by failing to properly

assess Plaintiff's obesity in determining Plaintiff's RFC; and (3) whether the ALJ erred by failing to properly consider the medical opinion evidence. The Court will address each issue in turn.

### A) Whether the Appeals Council erred by finding that Plaintiff does not meet Medical Listing 12.05.

Plaintiff argues that the Appeals Council's decision, made without the benefit of specific testimony concerning the issue of Plaintiff's adaptive functioning, is not supported by substantial evidence. (Doc. 22 p. 15). Plaintiff contends that she had a documented full-scale IQ score of 68 during the relevant time period, as well as a full-scale IQ score of 71 accompanied by a verbal IQ score of 68. (Tr. 627). Citing to *Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001), Plaintiff argues that her IQ scores give rise to a rebuttable presumption that Plaintiff manifested deficits in adaptive functioning prior to age 22 sufficient to satisfy the requirements of Listing 12.05. (Doc. 22 p. 15). Plaintiff contends that the rationale proffered by the Commissioner failed to overcome the presumption that Plaintiff has deficits in adaptive functioning. (Doc. 22 p. 15-16). In response, Defendant argues that substantial evidence supports the Commissioner's determination that Plaintiff failed to demonstrate her mental impairments met or medically equaled the requirements of Listing 12.05. (Doc. 22 p. 17).

To establish disability at step three of the sequential evaluation, Plaintiff must establish that her impairments met or equaled a listed impairment. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citations omitted); *see* 20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 31 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530. "To 'equal' a Listing,

the medical findings must be 'at least equal in severity and duration to the listed findings.'" *See Wilson*, 284 F.3d at 1224; *Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). The evidentiary standards for presumptive disability under the listings are stricter than for cases that proceed to other steps in the sequential evaluation because the listings represent an automatic screening in based on medical findings rather than an individual judgment based on all relevant factors in a claimant's claim. *See* 20 C.F.R. §§ 404.15920(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926; *Zebley*, 493 U.S. at 532.

To meet Listing 12.05B, a claimant must satisfy the specific severity requirements in one of the two subsections, A or B. *See id.* § 12.00A, ¶ 3; *Crayton*, 120 F.3d at 1219; *Jones v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 507, 509 (11th Cir. 2017); *James v. Comm'r of Soc. Sec. Admin.*, 657 F. App'x 835, 838 (11th Cir. 2016); *Rodriguez v. Comm'r of Soc. Sec.*, 633 F. App'x 770, 773 (11th Cir. 2015); *Schrader v. Acting Comm'r of Soc. Sec.*, 632 F. App'x 572, 575-76 (11th Cir. 2015); *O'Neal v. Comm'r of Soc. Sec.*, 614 F. App'x 456, 458-59 (11th Cir. 2015). Here, the only relevant subsection is B, which may be satisfied by showing (1) a full scale IQ score of 70 or below; (2) significant deficits in adaptive functioning currently manifested by extreme limitation in one, or marked limitation in two, of four broad functional areas identified below; and (3) evidence showing that the disorder manifested before age 22. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05B. For prong (2), adjudicators must assess an individual's ability to (a) understand, remember, or apply information; (b) interact with others; (c) concentrate, persist, or maintain pace; and (d) adapt or manage oneself. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(B)(2).

Here, Defendant concedes that Plaintiff met the criteria (1) of subsection B, having presented a full-scale IQ score of 67. (Tr. 728-29). The determinative issue is whether Plaintiff had significant deficits in adaptive functioning.

In *Hodges*, the Eleventh Circuit held that IQ tests create a rebuttable presumption of a fairly constant IQ score throughout life; thus, the claimant need not submit IQ test scores prior to age 22 to satisfy the requirements of Listing 12.05. *See Id.* at 1268-69. To rebut this presumption, the Commissioner may present evidence of Plaintiff's daily life. *See Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001); *Jones*, 695 F. App'x at 509; *James*, 657 F. App'x at 838; *Rodriguez*, 633 F. App'x at 773; *O'Neal*, 614 F. App'x at 459; *see also Crayton*, 120 F.3d at 1219-20 (reiterating holding that a valid IQ score need not be conclusive of mental retardation where IQ score is inconsistent with other evidence in record concerning claimant's daily activities and behavior) (citing *Lowery*, 979 F.2d at 837); *Popp v. Heckler*, 779 F.2d 1497, 1500 (11th Cir. 1986) ("[T]he ALJ was not required to find that [the claimant] was mentally retarded based on the results of the IQ test. The ALJ is required to examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior.").

In this case, the Court finds that the Commissioner rebutted the assumption. In its decision, the Appeals Council noted that although Plaintiff attended special education classes, she graduated high school with a regular diploma. (Tr. 5, 154, 453). She could read and understand a newspaper, magazine articles, and correspondence from the Social Security Administration. (Tr. 5, 23, 161). She drafted emails and messages on Facebook. (Tr. 5, 156-57). Plaintiff was the primary caregiver for a young child, managed her household, and performed many household chores. (Tr. 5, 102-03, 120, 148-49, 156, 471-74). Additionally, Plaintiff had a driver's license and drove. (Tr. 149-50). She also had held the same semi-skilled job for 14 years and performed various other unskilled work at substantial gainful activity levels. (Tr. 26, 122, 150-51, 174-88, 602).

These daily activities show that Plaintiff lacked the required adaptive deficits to meet Listing 12.05. *See Jones*, 695 F. App'x at 509-10; *James*, 657 F. App'x at 838; *Rodriguez*, 633 F.

App'x at 773-74; *Schrader*, 632 F. App'x at 577; *O'Neal*, 614 F. App'x 460. Accordingly, the Court finds that Plaintiff has not carried her burden of showing she meets, or medically equals, Listing 12.05 for intellectual disability because she did not show she had significant adaptive functioning deficits as required to satisfy Listing 12.05.

### B) Whether the ALJ erred by failing to properly assess Plaintiff's obesity in determining Plaintiff's RFC.

Plaintiff argues that the ALJ erred by failing to properly assess Plaintiff's obesity in determining the RFC. (Doc. 22 p. 21-23). Specifically, Plaintiff contends that the ALJ made the conflicting finding that there is no compelling evidence that her obesity is attributable to a specific medical condition, not realizing that obesity is a determinable condition in and of itself. (Doc. 22 p. 22). Further, Plaintiff argues that the ALJ's finding that there was "no apparent clinical evidence in the record that attributes her obesity as affecting a weight-bearing joint" is inaccurate, as there is clinical evidence of severe knee impairment and left ankle injury that was caused and/or exacerbated by her obesity. (Doc. 22 p. 22). Finally, Plaintiff argues that the ALJ made the confusing finding that Plaintiff's obesity does not present any adverse impact on her functional work, despite finding obesity to be a severe impairment. (Doc. 22 p. 23).

In response, Defendant argues that the ALJ properly assessed Plaintiff's RFC based on testimonial evidence and medical records showing no significant limitations associated with obesity. (Doc. 22 p. 24). Further, Defendant argues that Plaintiff has not shown that her obesity caused greater limitations than accommodated in the ALJ's RFC finding. (Doc. 22 p. 24).

The ALJ is required to follow the five-step sequential evaluation process in evaluating whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step two, the ALJ is required to identify and evaluate a claimant's medically determinable impairments. *Winschel*, 631 F.3d at 1178; 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). SSA has acknowledged that

"[o]besity can cause limitation of function…in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling." 67 Fed. Reg. 57859 (Sept. 12, 2002). Accordingly, SSA adopted Social Security Ruling SSR 02-1p, which requires that an RFC assessment take account of the effect obesity has on and individual's ability to work. The Eleventh Circuit has observed that, although the Social Security Rulings are not binding on the Court, they should be accorded "great respect and deference." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (unpublished) (citing B. *ex rel. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. Unit B Apr. 1981)).

In this case, the Court finds no error in the ALJ's consideration of Plaintiff's obesity. In her decision, the ALJ considered Plaintiff's obesity and complied with her responsibility to consider the effects of obesity in assessing Plaintiff's disability claim, including her RFC. *See* SSR 02-1p, 2002 WL 34686281, at *1. Plaintiff never alleged disability or any specific limitation due to obesity. (Tr. 452). Even so, the ALJ expressly discussed SSR 02-1p. (Tr. 13, 24). The ALJ considered evidence of Plaintiff's weight and height and weight history in finding that her obesity constituted a severe impairment. (Tr. 15, 19, 148). The ALJ found that Plaintiff's obesity did not meet or medically equal a listing or increase the severity of any of Plaintiff's other conditions to the point of meeting the associated listing. (Tr. 16). The ALJ also discussed Plaintiff's obesity in assessing her RFC and surmised that, the record did not "attribute her obesity as affecting a weight-bearing joint". (Tr. 24). The ALJ further found that Plaintiff's obesity did not present an adverse impact on her other medically determined impairments or her RFC to work. (Tr. 24).

As Defendant notes, Plaintiff has failed to show that her obesity caused her greater limitations than determined by the ALJ in her RFC finding. No physician elaborated on the severity or nature of Plaintiff's obesity, much less concluded that her obesity resulted in a

"[o]besity can cause limitation of function…in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling." 67 Fed. Reg. 57859 (Sept. 12, 2002). Accordingly, SSA adopted Social Security Ruling SSR 02-1p, which requires that an RFC assessment take account of the effect obesity has on and individual's ability to work. The Eleventh Circuit has observed that, although the Social Security Rulings are not binding on the Court, they should be accorded "great respect and deference." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (unpublished) (citing B. *ex rel. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. Unit B Apr. 1981)).

In this case, the Court finds no error in the ALJ's consideration of Plaintiff's obesity. In her decision, the ALJ considered Plaintiff's obesity and complied with her responsibility to consider the effects of obesity in assessing Plaintiff's disability claim, including her RFC. *See* SSR 02-1p, 2002 WL 34686281, at *1. Plaintiff never alleged disability or any specific limitation due to obesity. (Tr. 452). Even so, the ALJ expressly discussed SSR 02-1p. (Tr. 13, 24). The ALJ considered evidence of Plaintiff's weight and height and weight history in finding that her obesity constituted a severe impairment. (Tr. 15, 19, 148). The ALJ found that Plaintiff's obesity did not meet or medically equal a listing or increase the severity of any of Plaintiff's other conditions to the point of meeting the associated listing. (Tr. 16). The ALJ also discussed Plaintiff's obesity in assessing her RFC and surmised that, the record did not "attribute her obesity as affecting a weight-bearing joint". (Tr. 24). The ALJ further found that Plaintiff's obesity did not present an adverse impact on her other medically determined impairments or her RFC to work. (Tr. 24).

As Defendant notes, Plaintiff has failed to show that her obesity caused her greater limitations than determined by the ALJ in her RFC finding. No physician elaborated on the severity or nature of Plaintiff's obesity, much less concluded that her obesity resulted in a

functional impairment. *See James v. Barnhart*, 177 F. App'x 875, 878 n.2 (11th Cir. 2006) (finding ALJ properly excluded obesity from severe impairment findings, where claimant did not allege limitations due to obesity and the only physician to attribute claimant's shortness of breath to her obesity did not elaborate on the severity of her obesity or conclude it was a functional impairment). Thus, substantial evidence shows the ALJ properly considered and fully accounted for the effects of Plaintiff's obesity.

### C) Whether the ALJ erred by failing to properly consider the medical opinion evidence.

Plaintiff argues that the ALJ erred by failing to explicitly consider or weigh the opinion of consulting psychologist Judy Solman, Ph.D., who conducted a two-day evaluation of Plaintiff. (Doc. 22 p. 26). Plaintiff notes that the ALJ, despite discussing Dr. Solman's IQ testing, did not discuss Dr. Solman's findings related to severe communication and reading problems and other limitations. (Doc. 22 p. 26). In addition, Plaintiff argues that the ALJ erred by according only "some weight" to the opinion of consultative examiner Nancy Kelly, Psy.D., who conducted a mental examination of Plaintiff and administered psychological and cognitive testing. (Doc. 22 p. 27). In response, Defendant argues that the ALJ properly considered the opinions of Drs. Solman and Kelly and substantial evidence supports the ALJ's mental RFC assessment (Doc. 22 p. 28-34).

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's

RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.,* 877 F.Supp.2d 1254, 1265 (M.D. Fla. 2012).

The Court begins with the ALJ's treatment of Dr. Solman's opinion. The record shows that on October 20, 2010 and November 30, 2010, Plaintiff presented to psychologist Dr. Solman for a consultative evaluation, including various cognitive tests. (Tr. 626-31). Plaintiff obtained a full scale IQ score of 71 on intelligence testing, and other testing supported a diagnosis of dyslexia. (Tr. 627). Plaintiff's reading test scores placed her in the 1st percentile nationally for oral reading, about a 4th or 5th grade level for decoding, and in the deficit range for comprehension. (Tr. 630). Additionally, Plaintiff's verbal skills were below average, she had varied memory with improvement after repeated trials, and she had "solid" visual-spatial skills for a number of tasks, including planning and organizing. (Tr. 630-31). Dr. Solman opined that Plaintiff appeared to be a candidate for SSI based on her "learning delays" and dyslexia (Tr. 631).

In her decision, the ALJ discussed the evidence from Dr. Solman as follows:

> Psychological testing in late 2010 with Dr. Judy Solman showed claimant to have a full scale IQ of 71. She appeared to suffer from dyslexia and read at a fourth or fifth grade level. Her verbal and mathematics skills were consistently below average. Her memory was varied (9F).

(Tr. 20). The ALJ did not specify the weight she accorded to Dr. Solman's opinion.

In this case, the Court finds that remand is not appropriate for the ALJ to specifically weigh Dr. Solman's opinion. Because she was not a treating physician, Dr. Solman's opinion was not entitled to any special deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Furthermore, Dr. Solman's opinion that Plaintiff may be a candidate for SSI based on her learning delays and dyslexia, was not entitled to any deference because it is an opinion on the question of disability reserved to the Commissioner. (Tr. 631). *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ did not merely discuss Dr. Solman's IQ testing, but noted Plaintiff's reading and

communication problems. (Tr. 20). Additionally, as Defendant notes, it appears the ALJ accepted Dr. Solman's findings concerning Plaintiff's limitations for reading because she found Plaintiff could perform no work that required reading or writing beyond the 5th grade reading level. (Tr. 18, 630). *See Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987 (11th Cir. 2015) (declining to remand where ALJ did not state the weight he assigned to a treating source opinion because his discussion of the source's treatment notes made clear the ALJ considered and gave weight to the evidence).

Likewise, the Court does not find it appropriate to remand the case for the ALJ to reevaluate Dr. Kelly's opinion. The record shows that Dr. Kelly performed a consultative examination including psychological testing in December 2012. (Tr. 726-32). Dr. Kelly opined that Plaintiff would have marked difficulties maintaining attention and making appropriate decisions but could follow and understand simple directions, perform simple tasks independently, maintain a regular schedule and learn new tasks, relate adequately with others, and deal appropriately with stress (Tr. 730-31). She recommended vocational training (Tr. 731).

In her decision, the ALJ assigned Dr. Kelly's opinion some weight, reasoning that the opinion was largely consistent with the record as a whole and reflected Plaintiff's limitation to handling simple tasks and decisions, but Plaintiff's high degree of daily activities and functioning over the years supported that she was not as limited as Dr. Kelly opined. (Tr. 24-25).

Here, the Court finds no error in the ALJ's decision not to adopt the entirety of Dr. Kelly's opinion. As noted above, the Eleventh Circuit does not require "that the ALJ specifically refer to every piece of evidence in his decision," so long as the decision is not "a broad rejection" that leaves a reviewing court with insufficient information to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1211; *see, e.g.*, *Adams*, 586 F. App'x

at 533-34. The ALJ's discussion and ultimate RFC finding demonstrate that the ALJ implicitly declined to accept the limitations for "marked" restrictions in maintaining attention and making appropriate decisions based on her review of the record as a whole and, particularly, Plaintiff's high degree of functioning and extensive regular activities. (Tr. 24-25).

Dr. Kelly's opinions regarding Plaintiff's ability to maintain attention and make decisions were inconsistent with other record evidence. (Tr. 24). *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (listing consistency with the record as a whole among the factors ALJs will consider in deciding the weight due an opinion). For instance, as the ALJ discussed elsewhere, a March 2011 psychological evaluation documented that Plaintiff could focus and maintain attention for psycho-diagnostic interview and follow along with a one-hour long television program. (Tr. 20, 22, 600). Plaintiff also demonstrated normal thought processes and content, intact language and memory function, and could read and follow simple and multi-step commands. (Tr. 603). Treatment notes from Lee Mental Health Center, dated August and September 2012 and July and October 2014, document that Plaintiff was fully oriented and cooperative on exam with fair insight and judgment, coherent, logical, and goal-oriented thoughts, and normal speech and psychomotor function. (Tr. 740-42, 748-49, 764-65, 771-72). While Plaintiff presented to the emergency room in December 2014 with a panic attack after a stressful event related to her daughter, her symptoms improved with medication, and at her next dated exam, she had normal mood affect and behavior. (Tr. 781-82, 805-06).

Further, other opinion evidence supported that Plaintiff could perform the demands of simple work. In October 2011, state agency psychologist Dr. Diaz reviewed the evidence available on reconsideration and opined that, at a minimum, Plaintiff could carry out simple tasks for two-hour increments, understand and remember simple instructions, manage appropriate, superficial,

interpersonal interactions, and cope with minor changes in work routines. (Tr. 639). The ALJ considered this opinion and assigned it weight (Tr. 25). *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e) (explaining that state agency medical consultants are experts in the Social Security disability programs, and their opinions may be entitled to great weight when they are supported by the evidence of record); SSR 96-6p, 1996 WL 374180, at *2-3.

Plaintiff has failed to demonstrate that the ALJ committed reversible error by improperly considering the opinions of Drs. Solman and Kelly. Accordingly, the Court will not disturb the ALJ's findings on review.

### III.  Conclusion

The decision of the Commissioner is **AFFIRMED.**  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 22, 2019.

*(signature)*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties